## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| AUTO INJECTION TECHNOLOGIES LLC, | § § § | Case No. |
| | § | **JURY TRIAL DEMANDED** |
| Plaintiff, | § § | |
| v. | § § | |
| BAYER AG, | § § | |
| Defendant. | § § § § | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Auto Injection Technologies LLC ("AIT" or "Plaintiff") for its Complaint against Defendant Bayer AG ("Bayer" or "Defendant") for patent infringement, alleges as follows:

### THE PARTIES

1.      AIT is organized and existing under the laws of the State of Texas, with its principal place of business located at 104 East Houston Street, Suite 140, Marshall Texas 75670.

2.      Upon information and belief, Defendant Bayer is a foreign corporation, organized and existing under the laws of the Federal Republic of Germany, with a place of business at Kaiser-Wilhelm-Allee 1, 51368 Leverkusen, Germany, and may be served pursuant to the Hague Convention.

### JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 1367.

4.    This Court has specific and personal jurisdiction over the Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute.  Upon information and belief, the Defendant has sufficient minimum contacts with the forum because Defendant transacts substantial business in the State of Texas and in this Judicial District.  Further, the Defendant has, directly or through subsidiaries or intermediaries, committed and continues to commit acts of patent infringement in the State of Texas, and places its products and/or services, including those accused herein of infringement, into the stream of commerce which terminates in the Judicial District of the Eastern District of Texas, as alleged more particularly below.  For example, on information and belief, the Accused Products are available for purchase in this Judicial District.

5.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c) because the Defendant is a foreign company that may be sued in any Judicial District, including the Eastern District of Texas.  The Defendant is subject to personal jurisdiction in this Judicial District and has committed acts of patent infringement in this Judicial District.  On information and belief, Defendant through its own acts, makes, uses, sells, and/or offers to sell infringing products within this Judicial District, regularly does and solicits business in this Judicial District, and has the requisite minimum contacts with the Judicial District, such that this venue is a fair and reasonable one.  Further, upon information and belief, the Defendant has admitted or not contested proper venue in this Judicial District in other patent infringement actions.

**PATENTS-IN-SUIT**

6.    On December 31, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,617,127 (the "'127 Patent") entitled "Medicament Injection Apparatus."    A   true   and   correct   copy   of   the   '127   Patent   is   available   at

https://patentimages.storage.googleapis.com/2d/67/d0/29e3034a58c2f9/US8617127.pdf.

7.     On September 3, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,523,827 (the "'827 Patent") entitled "Medicament Injection Apparatus."   A true and correct copy of the '827 Patent is available at https://patentimages.storage.googleapis.com/ea/cd/88/80649d88ebe8d8/US8523827.pdf.

8.     On January 6, 2015, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,926,553 (the "'553 Patent") entitled "Pen-type Injector Having an Electronic Control Unit."   A true and correct copy of the '553 Patent is available at https://patentimages.storage.googleapis.com/a5/09/d4/03dafda7e6599f/US8926553.pdf.

9.     AIT is the sole and exclusive owner of all right, title, and interest in, the '127 Patent, '827 Patent, and the '553 Patent (collectively, the "Patents-in-Suit" or "Asserted Patents") and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit.   AIT also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

## FACTUAL ALLEGATIONS

10.     The Patents-in-Suit generally cover systems directed at medicament dosing, dispensing, and delivery.   They were invented by Robert Woolston, Shane Alistair Day, Christopher Nigel Langley, and Robert Frederick Veasey while they were employed at what is now Sanofi-Aventis Deutschland GmbH.

11.     The '127 and '827 Patents are directed at self-administered medical devices.   The patents cover a variety of mechanisms, such as a timer that can be programed, and audio indicators that indicate when the proper amount of medicant has been dispensed to the user.

12.     The '553 Patent is directed at injection devices.  The patent covers an electronically controlled drive mechanism which is initiated and relies on signals, for example, to indicate proper injection and dosage.

13.     Upon information and belief, Defendant has had knowledge and notice of the Patents-in-Suit, and its infringement thereof, since they issued.  Defendant was a direct competitor to Sanofi-Aventis Deutschland GmbH, and upon information and belief, monitored or was otherwise aware of its patented inventions, due to Sanofi-Aventis Deutschland GmbH's impact on Defendant's market position.  Alternatively, to the extent that Defendant avoided actual knowledge of the Patents-in-Suit, and its infringement thereof, it was willfully blind.  Upon information and belief, to the extent it lacked actual knowledge of infringement, Defendant deliberately avoided learning of infringement despite subjectively believing that there was a high probability that it infringed Sanofi-Aventis Deutschland GmbH patents, and specifically the Patents-in-Suit.  Upon information and belief, Defendant has adopted a policy or practice of not reviewing the patents of others, including those related to Defendant's specific industry and Sanofi-Aventis Deutschland GmbH in particular, thereby remaining willfully blind to the Patents-in-Suit.  Upon information and belief, Defendant lacks written policies disseminated to employees regarding monitoring or avoidance of patent infringement by Defendant and lacks mechanisms for employees to report patents which they believe Defendant may infringe.  Upon information and belief, Defendant and its employees understood that there was a high likelihood that patents filed on innovations by Sanofi-Aventis Deutschland GmbH read on the Accused Products based on their widely publicized R&D programs, and competitor status.

14.     Defendant has infringed and continues to infringe one or more of the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others

4

to make, use, sell, offer to sell, and/or import medicament injection devices (the "Accused Products").  For example, the Bayer BETACONNECT.

15.     For example, upon information and belief, Defendant tracks sales and growth of the Accused Products on, at least, a quarterly basis.[1]

16.     For example, Defendant speaks about a "global **network** of research and development facilities," of which the United States is a "major site."[2]

17.     For example, Defendant owns the trademark attached to www.betaseron.com.



18.     For example, Defendant offers financial support for the purchase of its product with its trademark attached https://www.betaseron.com/patient-support/financial-support.



---

[1] https://www.bayer.com/sites/default/files/2024-11/bayer-quarterly-statement-q3-2024.pdf
[2] https://www.bayer.com/sites/default/files/2025-03/bayer-annual-report-2024.pdf
[3]
https://www.betaseron.com/https://tsdr.uspto.gov/#caseNumber=87908201&caseSearchType=US_APPLICATION
&caseType=DEFAULT&searchType=statusSearch

19.    For example, the root url (bayerhealthcare.com[4]) for an online manual for BETACONNECT (https://labeling.bayerhealthcare.com/html/products/Betaconnect_IFU.pdf) redirects to Bayer AG's website (bayer.com/de/), as shown below:



## COUNT I
### (Infringement of the '127 Patent)

20.    Paragraphs 1 through 19 are incorporated by reference as if fully set forth herein.

21.    AIT has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '127 Patent.

22.    Defendant infringes, contributes to the infringement of, and/or induces infringement of the '127 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '127 Patent including, but not limited to, at least the Accused Product.

[4] Last visited March 7, 2025

6

23.     Defendant has directly infringed and continues to directly infringe the '127 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '127 Patent.  Upon information and belief, the Accused Products practice the methods and systems covered by the '127 Patent.

24.     For example, Defendant has and continues to directly infringe at least claim 1 of the '127 Patent by making, using, offering to sell, selling, and/or importing into the United States products which comprise a medicament injection device suitable for the self-administration of a medicament, the device comprising: a sounder, wherein upon completion of an injection stroke, a predetermined period of time is allowed to lapse during which medicament is permitted to disperse, and wherein the sounder generates an audible signal indicating to the user when to remove the needle from the body after said dispersion of an injected medicament; a drive means; and a timer having a control means, wherein the timer measures the predetermined period from completion of operation of the drive means and the control means resets the timer upon completion of the predetermined period to measure a time elapsed following the injection operation.

25.     The Accused Products are medicament injection devices suitable for the self-administration of a medicament.  For example, the BETACONNECT is used by the patient to inject themselves with the Betaferon (or Betaseron), a medicament.



Source: https://labeling.bayerhealthcare.com/html/products/Betaconnect_IFU.pdf, pg. 4,
Last Accessed: March 6, 2025

26.    The Accused Products comprise a sounder, wherein upon completion of an injection stroke, a predetermined period of time is allowed to lapse during which medicament is permitted to disperse.  For example, the BETACONNECT contains a sounder, as it emits two short beeps.  These beeps emitted are set to a predetermined time, which corresponds to the correct dosage, as the beeps indicate when the dosage is complete, and the needle may be withdrawn.



Source https://labeling.bayerhealthcare.com/html/products/Betaconnect_IFU.pdf, Page 11,
Last Accessed: March 6, 2025



Source https://labeling.bayerhealthcare.com/html/products/Betaconnect_IFU.pdf, Page 11,
Last Accessed on 11 October 2022

27.    The Accused Products comprise a sounder, wherein the sounder generates an audible signal indicating to the user when to remove the needle from the body after said dispersion of an injected medicament.  For example, the BETACONNECT uses an audible signal, two beeps, to indicate to the user that they may remove the needle after the injection of Betaferon.



Source: https://labeling.bayerhealthcare.com/html/products/Betaconnect_IFU.pdf, Page 10,
Last Accessed on 11 October 2022



Source https://labeling.bayerhealthcare.com/html/products/Betaconnect_IFU.pdf,
Page 11, Last Accessed on 11 October 2022

28.    The Accused Products comprise a drive means.    For example, the BETACONNECT comprises a drive means in the form of an electronic controller that control a drive means to deliver Betaferon to the patient.



Source: https://www.betaseron.com/patient-support/betaconnecttm-electronic-autoinjector,
Page 1, Last Accessed on 11 October 2022

injectable DMTs. For example, electronic autoinjectors can improve the overall injection experience by employing new technology. Some of the new features of electronic autoinjectors include silent injections owing to a motorized injection process, hidden needles, individual injection settings (e.g., adjustable injection speed and depth), skin sensors to detect that the device is positioned correctly before injection, recording of dose history, and injection reminder functions [4, 7, 11].

Source: https://europepmc.org/article/PMC/5130914, Page 3,
Last Accessed on 11 October 2022



Source: https://fccid.io/2AAGY-BETAC1/Internal-Photos/09-betaCONNECT-IntPho-2128705.pdf,
Page 1 and 2, Last Accessed on 11 October 2022

29.    The Accused Products comprise a timer having a control means, wherein the timer measures the predetermined period from completion of operation of the drive means and the control means resets the timer upon completion of the predetermined period to measure a time elapsed following the injection operation.  For example, the BETACONNECT contains a micro controller which can control a timer which is configured to measure the injection time once the injection is complete, the timer is reset.



Source: https://labeling.bayerhealthcare.com/html/products/Betaconnect_IFU.pdf,
Page 4, Last Accessed on 11 October 2022



Step 5: Check the injection status

The lit blue bar goes down in stages as the injection progresses.

**Do not interrupt the injection.**
**The injection cycle will be interrupted if you:**

- Press the on-off button before the injection is complete.
- Removal or slight movement of your BETACONNECT from the injection site before the injection is complete.

**i.  Reminder on-off switch:** As a back up to your standard method of tracking injections,use the built-in reminder if you want your BETACONNECT to let you know that it has been 48 hours (2 days) since your last injection. When it is time for your next injection, you should hear a beep and see a flashing light. If you do not want to use the reminder, you can turn it off. See section 4.3, "Setting the injection reminder." Make sure you follow the injection schedule given to you by your healthcare provider.

Source: https://labeling.bayerhealthcare.com/html/products/Betaconnect_IFU.pdf,
Page 10 and 5, Last Accessed on 11 October 2022



https://fccid.io/2AAGY-BETAC1/Internal-Photos/09-betaCONNECT-IntPho-2128705.pdf,
Page 1 and 2, Last Accessed on 11 October 2022

12

30.     Defendant has indirectly infringed and continues to indirectly infringes one or more claims of the '127 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally inducing infringement by others, such as Defendant's customers and end-users, in this District and elsewhere in the United States.   For example, Defendant's customers and end-users directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the Accused Products.  Defendant induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation.  Because of Defendant's inducement, Defendant's customers and end-users use the Accused Products in a way Defendant intends and it directly infringes the '127 Patent.  Defendant performs these affirmative acts with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '127 Patent, but while remaining willfully blind to the infringement.

31.     Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '127 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '127 Patent is directly infringed by others.  The accused components within the Accused

Products are material to the invention of the '127 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '127 Patent.  Defendant performs these affirmative acts with knowledge of the '127 Patent and with intent, or willful blindness, that it causes the direct infringement of the '127 Patent.

32.    AIT is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the '127 Patent.

33.    AIT has suffered damages as a result of Defendant's direct and indirect infringement of the '127 Patent in an amount to be proved at trial.

34.    AIT has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '127 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

**COUNT II**
**(Infringement of the '827 Patent)**

35.    Paragraphs 1 through 19 are incorporated by reference as if fully set forth herein.

36.    AIT has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '827 Patent.

37.    Defendant infringes, contributes to the infringement of, and/or induces infringement of the '827 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '827 Patent including, but not limited to, at least the Accused Products.

38.    Defendant has directly infringed and continues to directly infringe the '827 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C.

§ 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '827 Patent.  Upon information and belief, these products include the Accused Products that practices the methods and systems covered by the '827 Patent.

39.    For example, Defendant has and continues to directly infringe at least claim 1 of the '827 Patent by making, using, offering to sell, selling, and/or importing into the United States products that comprise a medicament injection apparatus suitable for the self-administration of a medicament, comprising: a display; and a timer, the timer being actuated upon commencement of an injection operation, wherein the timer runs to a predetermined time following completion of the injection operation, the predetermined time following completion of the injection operation being a time sufficient to allow the injected medicament adequately to disperse locally from an injection site within a patient, and the display operates while the timer runs; wherein the display runs from the commencement of the injection operation without any indication of the completion of the injection operation until said predetermined time has elapsed and then stops, thereby indicating to the user when to remove a needle from a body of the user after said dispersion of the injected medicament; and the timer and the display automatically stop upon expiration of the predetermined time.

40.    The Accused Products comprise a medicament injection apparatus suitable for the self-administration of a medicament.  For example, the BETACONNECT is used by a patient to inject themselves with Betaferon, a medicament.

15



Source: https://labeling.bayerhealthcare.com/html/products/Betaconnect_IFU.pdf, pg. 4,
Last visited: March 6, 2025

41.     The Accused Products comprise a display.  For example, the BETACONNECT has

a display.



Source: https://youtu.be/e_XIGzxlc9E, Time: 6:20,
Last Accessed on 11 October 2022

42.    The Accused Products comprise a timer, the timer being actuated upon commencement of an injection operation, wherein the timer runs to a predetermined time following completion of the injection operation, the predetermined time following completion of the injection operation being a time sufficient to allow the injected medicament adequately to disperse locally from an injection site within a patient, and the display operates while the timer runs.  For example, the BETACONNECT, has a timer which begins upon injections, allows medicament to be dispersed, and the display operates with the timer runs.



Source https://labeling.bayerhealthcare.com/html/products/Betaconnect_IFU.pdf, Page 10,
Last Accessed on 11 October 2022



Press the blue lid release button to open the lid.

The setting allows for a slow, medium, or fast injection.

When you receive BETACONNECT, it is set to the medium injection speed. Ask your healthcare provider if you should use a different injection setting before changing.

Set the injection speed slider to the desired setting



To adjust the injection speed:

Fast:      Move slider to ◀◀ symbol.
Medium:  Move slider to ◀ symbol.
Slow:     Move slider to ◁ symbol.

i.  **Reminder on-off switch:** As a back up to your standard method of tracking injections, use the built-in reminder if you want your BETACONNECT to let you know that it has been 48 hours (2 days) since your last injection. When it is time for your next injection, you should hear a beep and see a flashing light. If you do not want to use the reminder, you can turn it off. See section 4.3, "Setting the injection reminder." Make sure you follow the injection schedule given to you by your healthcare provider.

Source: https://labeling.bayerhealthcare.com/html/products/Betaconnect_IFU.pdf, Page 13 and 5, Last Accessed on 11 October 2022

Source: https://youtu.be/e_XIGzxlc9E, Time: 6:42,
Last Accessed on 11 October 2022

43.    The Accused Products comprise a display, wherein the display runs from the commencement of the injection operation without any indication of the completion of the injection operation until said predetermined time has elapsed and then stops, thereby indicating to the user when to remove a needle from a body of the user after said dispersion of the injected medicament. For example, the BETACONNECT has a display that runs from the beginning of the injection, and does not indicate the injection is completed until the predetermined amount of time has elapsed, when it indicates the needle may be removed.



Source: https://youtu.be/e_XIGzxlc9E, Time: 6:20,
Last Accessed on 11 October 2022



The lit blue bar goes down in stages as the injection progresses.

**Do not interrupt the injection.**
**The injection cycle will be interrupted if you:**

- Press the on-off button before the injection is complete.
- Removal or slight movement of your BETACONNECT from the injection site before the injection is complete.

Source https://labeling.bayerhealthcare.com/html/products/Betaconnect_IFU.pdf, Page 10,
Last Accessed on 11 October 2022



Source: https://youtu.be/e_XIGzxlc9E, Time: 6:47, Last Accessed on 11 October 2022, Exhibit B



Step 6: When the injection is finished

BETACONNECT will sound 2 short beeps and show a blue, flashing bar after the injection is complete and the needle is withdrawn.

**Do not remove BETACONNECT from the injection site until the injection is complete.**

- BETACONNECT will automatically power down once the injection is complete.

Source: https://labeling.bayerhealthcare.com/html/products/Betaconnect_IFU.pdf, Page 11, Last Accessed on 11 October 2022

Source: https://youtu.be/e_XIGzxlc9E, Time: 7:04,
Last Accessed on 11 October 2022

44.    The Accused Products comprise a timer and a display, wherein the timer and the display automatically stop upon expiration of the predetermined time.   For example, the BETACONNECT will automatically power down upon the expiration of a predetermined amount of time.



Source: https://labeling.bayerhealthcare.com/html/products/Betaconnect_IFU.pdf, Page 11,
Last Accessed on 11 October 2022



Source: https://youtu.be/e_XIGzxlc9E, Time: 7:04,
Last Accessed on 11 October 2022

45.     Defendant has indirectly infringed and continues to indirectly infringe one or more

claims of the '827 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally

inducing infringement by others, such as Defendant's customers and end-users, in this District and

elsewhere in the United States.   For example, Defendant's customers and end-users directly

infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell,

selling, and/or importing into the United States products that include infringing technology, such

as the Accused Products.   Defendant induces this direct infringement through its affirmative acts

of manufacturing, selling, distributing, and/or otherwise making available the Accused Products,

and providing instructions, documentation, and other information to customers and end-users

suggesting that they use the Accused Products in an infringing manner, including technical

support, marketing, product manuals, advertisements, and online documentation.   Because of

Defendant's inducement, Defendant's customers and end-users use the Accused Products in a way

Defendant intends and they directly infringes the '827 Patent.   Defendant performs these

affirmative acts with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '827 Patent, but while remaining willfully blind to the infringement.

46.     Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '827 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '827 Patent is directly infringed by others.  The accused components within the Accused Products are material to the invention of the '827 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '827 Patent.  Defendant performs these affirmative acts with knowledge of the '827 Patent and with intent, or willful blindness, that they cause the direct infringement of the '827 Patent.

47.     AIT is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the '827 Patent.

48.     AIT has suffered damages as a result of Defendant's direct and indirect infringement of the '827 Patent in an amount to be proved at trial.

49.     AIT has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '827 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT III
### (Infringement of the '553 Patent)

50.     Paragraphs 1 through 19 are incorporated by reference as if fully set forth herein.

51.     AIT has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '553 Patent.

52.     Defendant infringes, contributes to the infringement of, and/or induces infringement of the '553 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '553 Patent including, but not limited to, at least the Accused Product.

53.     Defendant has directly infringed and continues to directly infringe the '553 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '553 Patent.  Upon information and belief, these products include the Accused Products that practice the methods and systems covered by the '553 Patent.

54.     For example, Defendant has and continues to directly infringe at least claim 1 of the '553 Patent by making, using, offering to sell, selling, and/or importing into the United States products that comprise an injection device, comprising: a drive mechanism to expel selectively a dose of medicament from a medicament cartridge through a needle unit; an electronic control unit to control the drive mechanism, and a dispense button to generate a dispense button signal to the electronic control unit indicative of the dose to be expelled in which an arm button causes a first arm button signal to be sent to the electronic control unit to permit the dose to be expelled, wherein the arm button must generate the first arm button signal for a predetermined period of time before the electronic control unit will respond to the dispense button signal.

55.    The Accused Products are an injection device.  For example, the BETACONNECT is an injection device.



Source: https://labeling.bayerhealthcare.com/html/products/Betaconnect_IFU.pdf, pg. 4,
Last visited: March 6, 2025

56.    The Accused Products comprise a drive mechanism to expel selectively a dose of medicament from a medicament cartridge through a needle unit.    For example, the BETACONNECT has a medicament cartridge which expels a selective amount of medicant through a needle.

**Important Information about your BETACONNECT autoinjector:**

- **Only use prepared BETASERON® (interferon beta-1b) syringes for your injection with the BETACONNECT autoinjector.  See the Instructions for Use for BETASERON for how to prepare and measure your dose of BETASERON for use in the BETACONNECT autoinjector.**

https://labeling.bayerhealthcare.com/html/products/Betaconnect_IFU.pdf, Page 2,
Last Accessed on July 20, 2022



Source: https://youtu.be/fRuS6wG__-w, Time: 5:27,
Last Accessed on July 20, 2022



https://youtu.be/qWXUVwBeFsQ, Time: 1:36, Last Accessed on July 20, 2022

57.     The Accused Products comprise an electronic control unit to control the drive
mechanism.  For example, the BETACONNECT uses a drive mechanism to push the needle into
the user.  The drive mechanism is controlled by an electronic controller.



Source: https://labeling.bayerhealthcare.com/html/products/Betaconnect_IFU.pdf,
Page 10, Last Accessed on July 20, 2022



https://www.betaseron.com/betaconnect-system/betaconnecttm-electronic-autoinjector, Page 2,
Last Accessed on July 20, 2022

58.    The Accused Products comprise a dispense button to generate a dispense button signal to the electronic control unit indicative of the dose to be expelled in which an arm button causes a first arm button signal to be sent to the electronic control unit to permit the dose to be expelled.  For example, the BETACONNECT has a button that signals the electronic control unit to dispense a dose of medicament to a patient.



https://labeling.bayerhealthcare.com/html/products/Betaconnect_IFU.pdf, Page 10,
Last Accessed on July 20, 2022



Source: https://youtu.be/e_XIGzxlc9E, Time:6:20,
Last Accessed on July 20, 2022

59.   The Accused Products comprise an arm button, wherein the arm button must generate the first arm button signal for a predetermined period of time before the electronic control unit will respond to the dispense button signal.  For example, the BETACONNECT must wait for the power-on self-test to finish before the user may press the button to inject the medicament.



Source: https://labeling.bayerhealthcare.com/html/products/Betaconnect_IFU.pdf,
Page 7, Last Accessed on July 20, 2022



https://youtu.be/e_XIGzxlc9E, Time:4:00,
Last Accessed on July 20, 2022

60.     Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '553 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally inducing infringement by others, such as Defendant's customers and end-users, in this District and elsewhere in the United States.   For example, Defendant's customers and end-users directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the Accused Products.   Defendant induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products,

and providing instructions, documentation, and other information to customers and end-users suggesting that it uses the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of Defendant's inducement, Defendant's customers and end-users use the Accused Product in a way Defendant intends and they directly infringe the '553 Patent. Defendant performs these affirmative acts with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '553 Patent, but while remaining willfully blind to the infringement.

61. Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '553 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '553 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '553 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '553 Patent. Defendant performs these affirmative acts with knowledge of the '553 Patent and with intent, or willful blindness, that they cause the direct infringement of the '553 Patent.

62. AIT is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the '553 Patent.

63.    AIT has suffered damages as a result of Defendant's direct and indirect infringement of the '553 Patent in an amount to be proved at trial.

64.    AIT has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '553 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, AIT prays for relief against Defendant as follows:

a.    Entry of judgment declaring that Defendant directly and/or indirectly infringes one or more claims of each of the Patents-in-Suit;

b.    Entry of judgment declaring that Defendant's infringement of the Patents-in-Suit is willful;

c.    An order awarding damages sufficient to compensate Plaintiff for Defendant's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, including supplemental damages post-verdict, together with pre-judgment and post-judgment interest and costs;

d.    Enhanced damages pursuant to 35 U.S.C. § 284;

e.    Entry of judgment declaring that this case is exceptional and awarding Plaintiff its costs and reasonable attorney fees pursuant to 35 U.S.C. § 285;

f.    An accounting for acts of infringement;

g.    Such other equitable relief which may be requested and to which the Plaintiff is entitled; and

h.    Such other and further relief as the Court deems just and proper.

Dated:  April 9, 2025                    Respectfully submitted,

                                        /s/ *Vincent J. Rubino, III*
                                        Vincent J. Rubino, III
                                        NY Bar No. 4557435
                                        Email:  vrubino@fabricantllp.com
                                        Peter Lambrianakos
                                        NY Bar No. 2894392
                                        Email: plambrianakos@fabricantllp.com
                                        **FABRICANT LLP**
                                        411 Theodore Fremd Avenue,
                                        Suite 206 South
                                        Rye, New York 10580
                                        Telephone: (212) 257-5797
                                        Facsimile: (212) 257-5796

                                        ***ATTORNEYS FOR PLAINTIFF***
                                        ***AUTO INJECTION TECHNOLOGIES LLC***